FILED BY ___TS___ D.C.

Feb 6, 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-80013-CR-CANNON/MCCABE

18 U.S.C. § 1349
18 U.S.C. § 1347
18 U.S.C. § 982(a)(7)

UNITED STATES OF AMERICA

vs.

JOSEPH RODRIGUEZ,

    Defendant.
_____/

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times material to this Indictment:

#### Medicare Program

1. The Medicare Program ("Medicare") was a federally funded program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services ("HHS"), through its agency, the Centers for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare. Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

1

3. Medicare covered different types of benefits, which were separated into different program "parts." Medicare "Part A" covered health services provided by hospitals, skilled nursing facilities, hospices, and home health agencies. Medicare "Part B" was a medical insurance program that covered, among other things, medical services provided by physicians, medical clinics, laboratories, and other qualified health care providers, such as office visits, minor surgical procedures, and laboratory testing, that were medically necessary and ordered by licensed medical doctors or other qualified health care providers.

4. Physicians, clinics, and other health care providers, including laboratories, that provided services to beneficiaries were able to apply for and obtain a "provider number." A health care provider that received a Medicare provider number was able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries.

5. A Medicare claim was required to contain certain important information, including: (a) the beneficiary's name and Health Insurance Claim Number ("HICN"); (b) a description of the health care benefit, item, or service that was provide or supplied to the beneficiary; (c) the billing codes for the benefit, item, or service; (d) the date upon which the benefit, item, or service was provided or supplied to the beneficiary; and (e) the name of the referring physician or other health care provider, as well as a unique identifying number, known as a National Provider Identifier ("NPI"). The claim form could be submitted in hard copy or electronically.

**Part B Coverage and Regulations**

6. CMS acted through fiscal agents called Medicare administrative contractors ("MACs"), which were statutory agents for CMS for Medicare Part B. The MACs were private entities that reviewed claims and made payments to providers for services rendered to

2

beneficiaries. The MACs were responsible for processing Medicare claims arising within their assigned geographical area, including determining whether the claim was for a covered service.

7. First Coast Services Options, Inc. ("First Coast") was the MAC for the consolidated Medicare jurisdictions that covered Florida, Puerto Rico, and the U.S. Virgin Islands.

8. To receive Medicare reimbursement, providers must agree to not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare, and that they "will not submit claims with deliberate ignorance or reckless disregard of their truth or falsity."

## Laboratory Tests

### COVID-19 Testing and Antibody Testing

9. COVID-19 testing assessed whether an individual had the severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2), the virus that causes coronavirus disease ("COVID-19"). COVID-19 tests used a nasal swab to collect an upper respiratory specimen.

10. Antibody testing assessed whether an individual had been exposed to COVID-19 by determining whether the individual had developed antibodies as an immune response after exposure to COVID-19. Antibody testing required a blood sample.

### Other Blood Testing

11. Various forms of blood testing existed that could determine the levels of substances in the blood, such as vitamins, heavy metals, and other substances. Testing also existed to determine the levels of hormones in the blood. Laboratories could also perform genetic testing on blood to detect mutations in genes that could indicate a higher risk of developing certain diseases or health conditions in the future.

3

## Medicare Regulations

12. Except for certain statutory exceptions, Medicare did not cover laboratory testing that was "not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." Title 42, United States Code, Section 1395y(a)(1)(A).

13. If laboratory testing was necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member, Medicare imposed additional requirements before covering the testing. Title 42, Code of Federal Regulations, Section 410.32(a) provided, "All diagnostic x-ray tests, diagnostic laboratory tests, and other diagnostic tests must be ordered by the physician who is treating the beneficiary, that is, the physician who furnishes a consultation or treats a beneficiary for a specific medical problem and who uses the results in the management of the beneficiary's specific medical problem. Tests not ordered by the physician who is treating the beneficiary are not reasonable and necessary."

14. On or about May 8, 2020, in response to the public health emergency caused by the COVID-19 pandemic, CMS amended Title 42, Code of Federal Regulations, Section 410.32(a) to remove the requirement that tests for COVID-19, certain other respiratory pathogens, and FDA-authorized COVID-19 serology tests be ordered by a physician or non-physician practitioner ("NPP") to be covered by Medicare. 85 Fed. Reg. 27558.

15. On or about September 2, 2020, CMS amended Section 410.32(a) again to permit reimbursement for only one COVID-19, respiratory pathogen, or FDA-authorized COVID-19 serology test without the order of a physician or NPP; subsequent tests required the order of any health care professional authorized to do so under state law. 85 Fed. Reg. 54838.

4

16. Neither of these interim policies detailed above in paragraphs 14 and 15 amended Title 42, Code of Federal Regulations, Section 410.32(a), as described above in paragraph 13, as it applied to any other types of diagnostic laboratory tests, including blood testing.

### The Defendant and Related Entities

17. Phoenix Health Rising, LLC ("Phoenix Health") was a limited liability company formed under the laws of Florida, with its principal place of business in Broward County, Florida. Phoenix Health was a health event management company that provided wellness screening and diagnostic testing.

18. Defendant **JOSEPH RODRIGUEZ**, a resident of Broward County, Florida, owned and operated Phoenix Health with Individual 1, a resident of Broward County, Florida. **RODRIGUEZ** and Individual 1 were both managing members of Phoenix Health.

19. Individual 2 was a medical doctor and a resident of Orange County, Florida.

20. Laboratory A was a company incorporated under the laws of New York, with its principal place of business in Kings County, New York. **JOSEPH RODRIGUEZ** was a Vice President at Laboratory A.

21. Laboratory B was a company incorporated under the laws of New York that was a branch of Laboratory A that operated under a different name, and a different NPI number, from Laboratory A, with its principal place of business in Westchester County, New York. **JOSEPH RODRIGUEZ** was a managing employee of Laboratory B.

22. Laboratory C was a company incorporated under the laws of New York, with its principal place of business in Nassau County, New York.

5

## COUNT 1
### Conspiracy to Commit Health Care Fraud
### (18 U.S.C. § 1349)

1. The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2. From in or around February 2020, and continuing through in or around October 2020, the exact dates being unknown to the Grand Jury, in Broward and Palm Beach Counties, in the Southern District of Florida, and elsewhere, the defendant,

**JOSEPH RODRIGUEZ,**

did knowingly and willfully combine, conspire, confederate, and agree with Individual 1, and others known and unknown to the Grand Jury, to commit offenses against the United States, that is: to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

### Purpose of the Conspiracy

3. It was a purpose of the conspiracy for the defendant and his co-conspirators to unlawfully enrich themselves by, among other things: (a) billing beneficiaries for COVID-19, antibody, hormone, vitamin, genetic, and other blood tests; (b) falsifying doctors' orders and other documentation so that Laboratory A, Laboratory B, and Laboratory C could bill Medicare for blood testing, including hormone, vitamin, and genetic testing, provided to these beneficiaries; (c) submitting and causing the submission of false and fraudulent claims to Medicare for blood testing,

6

including hormone, vitamin, and genetic testing, that was medically unnecessary and ineligible for reimbursement; (d) concealing and causing the concealment of false and fraudulent claims submitted to Medicare; and (e) diverting fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the fraud.

### Manner and Means

The manner and means by which the defendant and his co-conspirators sought to accomplish the object and purpose of the conspiracy included, among other things:

4. During the COVID-19 pandemic, **JOSEPH RODRIGUEZ** and Individual 1, through Phoenix Health, solicited country clubs and community living developments in the Southern District of Florida to hold testing fairs for COVID-19 and antibody tests for their members and residents. The country clubs and community living developments were seeking such COVID-19 tests for their members, many of whom were elderly and worried about contracting COVID-19, and were accordingly seeking COVID-19 testing.

5. **JOSEPH RODRIGUEZ**, through Phoenix Health, offered to provide services in which members would drive through tents for quick retrieval of samples, including nasal swabs for COVID-19 testing and blood draws for antibody testing.

6. Phoenix Health caused participants to register online and provide their health insurance information. Members were also told that all fees would be covered by their health insurance plan. Many of the test recipients were Medicare beneficiaries.

7. After luring beneficiaries to the testing fairs with the promise of quick and reliable COVID-19 testing, **JOSEPH RODRIGUEZ** and Individual 1 tested beneficiaries and caused beneficiaries to be tested for additional blood testing that was medically unnecessary, often not requested by the beneficiary, not ordered by a doctor treating the beneficiary, and ineligible for

7

Medicare reimbursement. This included blood testing for hormones, heavy metal toxicity levels, vitamins, and genetic testing.

8.  **JOSEPH RODRIGUEZ** falsely listed and caused to be listed Individual 2 as the referring provider for many of these blood tests, when in fact, Individual 2 was not treating the beneficiaries and had not ordered the tests.

9.  **JOSEPH RODRIGUEZ** knew that Individual 2 had not met the beneficiaries prior to the COVID-19 testing fairs, was not present at the testing fairs, and did not order any tests to treat any beneficiary's specific medical problem, as required by Medicare. **JOSEPH RODRIGUEZ** also knew that these tests were authorized without a doctor properly consulting with the beneficiaries about the specific tests being performed, the purposes of those tests, the need for the tests, and the risks of the tests, and that these test results were not used by the authorizing doctor in the treatment of the beneficiaries.

10. In addition to billing for COVID-19 testing, **JOSEPH RODRIGUEZ** and other co-conspirators caused Laboratory A, Laboratory B, and Laboratory C to submit false and fraudulent claims to Medicare, in at least the approximate amount of $15,700,000, for additional fraudulent blood tests that were for hormones, heavy metal toxicity levels, vitamins, and genetic testing that were designed for maximum reimbursement, medically unnecessary, and ineligible for reimbursement. As the result of these false and fraudulent claims, Medicare made payments to Laboratory A, Laboratory B, and Laboratory C in at least the approximate amount of $541,000.

11. **JOSEPH RODRIGUEZ** and other co-conspirators used the fraud proceeds received from Medicare to benefit themselves and others, and to further the fraud.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2-7
## Health Care Fraud
## (18 U.S.C. § 1347)

1. The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2. From in or around February 2020, and continuing through in or around October 2020, the exact dates being unknown to the Grand Jury, in Broward and Palm Beach Counties, in the Southern District of Florida, and elsewhere, the defendant,

**JOSEPH RODRIGUEZ,**

in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said healthcare benefit program.

### Purpose of the Scheme and Artifice

3. It was a purpose of the scheme and artifice for the defendant and his accomplices to unlawfully enrich themselves by, among other things: (a) referring beneficiaries for COVID-19, antibody, RPP, hormone, vitamin, genetic, and other blood testing; (b) falsifying doctors' orders so that Laboratory A, Laboratory B, and Laboratory C could bill Medicare for blood testing, including hormone, vitamin, and genetic testing, provided to these beneficiaries; (c) submitting and causing the submission of false and fraudulent claims to Medicare for blood testing, including hormone, vitamin, and genetic testing, that was medically unnecessary and ineligible for reimbursement; (d) concealing and causing the concealment of false and fraudulent claims

9

submitted to Medicare; and (e) diverting fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the fraud.

### The Scheme and Artifice

4.  The Manner and Means section of Count 1 of this Indictment is re-alleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

### Acts in Execution or Attempted Execution of the Scheme and Artifice

5.  On or about the date set forth as to each count below, in Broward County and Palm Beach County, in the Southern District of Florida and elsewhere, the defendant,

**JOSEPH RODRIGUEZ,**

in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, the above-described scheme and artifice to defraud a health care benefit program affecting commerce, as defined by Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in that the defendant submitted and caused the submission of false and fraudulent claims by Laboratory A, seeking the identified dollar amounts as listed:

10

| Count | Patient | Approx. Submission Date | Claim No. | Approx. Amount Billed | Approx. Amount Paid | Procedure Codes Billed |
|---|---|---|---|---|---|---|
| 2 | A.W. | 06/26/2020 | 751120178276212 | $4,265 | $152 | 80053, 80061, 82306, 82533, 82607, 82670, 82728, 82746, 82977, 83036, 84443, 84480, and 84481 |
| 3 | B.R. | 07/23/2020 | 751120205275120 | $4,750 | $153 | 80053, 80061, 82175, 82300, 82306, 82495, 82533, 82607, 82670, 82728, 84144, 84202, and 84270 |
| 4 | B.B. | 07/23/2020 | 751120198258494 | $2,993 | $119 | 84402, 84403, 84439, 84443, 84480, 84481, 84550, 85025, and 86141 |
| 5 | J.R. | 08/03/2020 | 751820216411670 | $9,182 | $318 | 80053, 80061, 82175, 82300, 82306, 82495, 82533, 82607, 82670, 82728, 82746, 82977, 83036, 83090, 83615, 83655, 84144, 84202, 84270, 84402, 84403, 84439, 84443, 84480, 84481, 84550, 85025, and 86141 |
| 6 | M.W. | 08/11/2020 | 751120224253030 | $6,098 | $280 | 80053, 82248, 82306, 82533, 82607, 82670, 82728, 82746, 82977, 83036, 83090, 83615, 84144, 84270, 84403, 84439, 84443, 84480, 84481, 84550, 85025, and 86141 |
| 7 | W.F. | 08/17/2020 | 751120230638490 | $6,188 | $209 | 80053, 80061, 82175, 82300, 82306, 82495, 82533, 82607, 82670, 82728, 82746, 82977, 83036, 83090, 83615, 83655, 84144, 84202, and 84270 |

Each in violation of Title 18, United States Code, Sections 1347 and 2.

## FORFEITURE ALLEGATIONS
## (18 U.S.C. § 982(a)(7))

1. The allegations of this Indictment are re-alleged and by this reference fully incorporated herein for alleging criminal forfeiture to the United States of certain property in which the defendant, **JOSEPH RODRIGUEZ**, has an interest.

2. Upon conviction of a violation of, or a conspiracy to violate, Title 18, United States Code, Section 1347, as alleged in this Indictment, the defendant shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross

11

proceeds traceable to the commission of such violation, pursuant to Title 18, United States Code, Section 982(a)(7).

All pursuant to Title 18, United States Code, Section 982(a)(7), and the procedures set forth at Title 11, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b)(1)(.

A TRUE BILL

_____
FOREPERSON

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

GLENN S. LEON, CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U. S. DEPARTMENT OF JUSTICE

JAMES V. HAYES
ASSISTANT CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U. S. DEPARTMENT OF JUSTICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

CASE NO.: _____

v.

JOSEPH RODRIGUEZ,

_____/
                 Defendant.

**CERTIFICATE OF TRIAL ATTORNEY**

**Superseding Case Information:**
New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of new counts _____

**Court Division** (select one)
☐ Miami   ☐ Key West   ☐ FTP
☐ FTL     ☑ WPB

I do hereby certify that:

1. I have carefully considered the allegations of the Indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, 28 U.S.C. §3161.

3. Interpreter: (Yes or No) No
   List language and/or dialect: _____

4. This case will take  3-5  days for the parties to try.

5. Please check appropriate category and type of offense listed below:
   (Check only one)                    (Check only one)
   I  ☑ 0 to 5 days                    ☐ Petty
   II ☐ 6 to 10 days                   ☐ Minor
   III ☐ 11 to 20 days                 ☐ Misdemeanor
   IV ☐ 21 to 60 days                  ☑ Felony
   V  ☐ 61 days and over

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____
7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Judge _____ Magistrate Case No. _____
8. Does this case relate to a previously filed matter in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____
9. Defendant(s) in federal custody as of _____
10. Defendant(s) in state custody as of _____
11. Rule 20 from the _____ District of _____
12. Is this a potential death penalty case? (Yes or No) No
13. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? (Yes or No) No
15. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No
16. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No
17. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024? No

By: _____
JAMES V. HAYES
DOJ Trial Attorney
SDFL Court ID No. A5501717

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name: __JOSEPH RODRIGUEZ__

Case No: _____

Count #: 1

Conspiracy to commit health care fraud

Title 18, United States Code, Section 1349
* **Max. Term of Imprisonment:** 10 years
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Three years
* **Max. Fine:** $250,000 or twice the value of the gross gain or loss, whichever is greater

Counts #: 2-7

Health care fraud

Title 18, United States Code, Section 1347
* **Max. Term of Imprisonment:** 10 years
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Three years
* **Max. Fine:** $250,000 or twice the value of the gross gain or loss, whichever is greater

*Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.